ANDREW M. HARING et al., complainants,

*v.*

MARTIN MARGROFF, 2D, et al., defendants.

[Decided December 5th, 1923.]

1. Where a testator provided in his will that certain real estate be sold "at any time my executors * * * have a good opportunity to do so at a fair price," this discretion so given them defeats a conversion, and the title thereto vests in the testator's heirs, subject to be divested upon the exercise of the power of sale given the executors.·

2. A devise of real estate, subject to a power of sale in executors, the proceeds of said real estate after sale to be given to the testator's widow, and at her death or remarriage all "property as it is left at her death or remarriage" to his son, there having been no sale of said real estate, can be supported as an executory devise, even though as a contingent remainder it fails for lack of a particular estate to support it.

On bill for partition.

*Mr. Charles C. Scott,* for the complainants.

*Messrs. Ward & McGinnis, Mr. Cornelius Doremus* and *Messrs. Morrison, Lloyd & Morrison,* for the defendants.

This is a bill for the partition of certain lands in the county of Bergen.

Martin Margroff died December 7th, 1898, seized of the lands referred to above forming a tract of about five acres. He left surviving as his next of kin and heirs-at-law his widow, Ellen; the defendant Martin Margroff, Jr.; children of his deceased daughter, Andrew M. and Walter Haring, and children of his deceased son Horace, Martin Margroff, 3d, John W. Margroff and Katherine Amelia Hunt, now Katherine Amelia Chapman. He also left a will, probated in the Bergen county surrogate's office January 4th, 1899, wherein he appointed his son, the defendant Martin Margroff, Jr., and Matthew D. White, executors, both of whom have qualified. The pertinent provisions of the will gave the testator's widow his personal property and an estate for life or during her widowhood in the mansion house, and then provide:

"If my mill property, known as the Hopper's Mills, and the about five acres land, opposite and across the road. situate at Waldwick, in Orvil Township, is not sold during my life time, I want it to be sold at private sale at any time my executors hereinafter named have a good opportunity to do so at a fair price, and the net proceeds to be given to my beloved wife, Ellen Margroff, for her use and benefit.

"After the decease of my beloved wife Ellen Margroff, or in case she remarries, I give devise and bequeath to my son, Martin Margroff, all the real and personal estate and property as it is left at her death or remarriage, to have and to hold the same to him, the said Martin Margroff, for his use and behoof forever."

Following this there was a bequest of $50 to each of his grandchildren, who are the complainants, each concluding with the same words that conclude the latter paragraph of the will just quoted, namely, "to his or her use and behoof forever."

The mill property has never been sold by the executors in the manner described in the will, and the testator's widow died in 1902, of course, without having received the proceeds of such sale. The defendant Martin is now the sole surviving executor. The testator's widow died intestate, leaving as her heirs-at-law and next of kin the same parties men-

tioned as standing in the same relation to the testator, and who, with the exception of the defendant Martin, are complainants. The defendant Martin has taken possession of said premises and claims title thereto, and has conveyed by several deeds parts thereof.

BENTLEY, V. C.

The important question is to determine the estate that the widow took under the devise of what is called his "mill property." When he said, speaking thereof, "I want it to be sold," &c., I feel that he was giving directions to his executors and that the same would have been obligatory upon them, and a conversion would have been effected at the time of his death were it not for the discretionary character of the power evidenced by the language "at any time my executors hereinafter named have a good opportunity to do so at a fair price." It seems to me that this discretion defeats a conversion:

"If the act converting * * * is left to the option, discretion or choice of the trustees or other parties, then no equitable conversion will take place, because no *duty* to make the change rests upon them." *3 Pom. Eq. Jur. (4th ed.)* § *1160.*

In the case of *Romaine* v. *Hendrickson, 24 N. J. Eq.* (at *p. 237*), the chancellor, speaking of a somewhat similar provision in the will, said as follows:

"The power of sale is not one that is to be exercised on the happening of a certain event, or at a given time, but is wholly discretionary, not only as to the time of sale, but as to whether the sale shall ever be made. It may never be exercised. It is a power and not a trust. The land was not devised to the executors, and in the meantime, until the sale, the title is in the heirs, and they have power to transfer their interest in it, at all events, so far as to entitle the alienee to all their rights, whatever disposition should be afterwards made of it. *Den* v. *Snowhill, 3 Zab. 447; Den* v. *Creveling, 1 Dutch. 449; Herbert* v. *Executor of Tuthill, Sax. 141;*

*Gesl* v. *Flock, 1 Gr. Ch. 108; Fluke* v. *Fluke's Executor, 1 C. E. Gr. 478.*

To like effect is *Parker* v. *Glover, 42 N. J. Eq. 559.*

Had the direction to sell been unequivocal, of course, it is clear that the conversion would have been instant, and I am inclined to believe that she would have taken the proceeds absolutely by reason of the unlimited power of disposal thereof. *Annin* v. *Vandoren, 14 N. J. Eq. 135; McClellan* v. *Larchar, 45 N. J. Eq. 17; Weaver* v. *Patterson, 92 N. J. Eq. 170.*

But, in view of the discretion vested in the executors and on the authorities mentioned above, I feel that no conversion occurred, and the title vested in the testator's heirs (*Hopping* v. *Gray, 82 N. J. Eq. 502,* and authorities collected at *p. 504*), subject to be divested upon the exercise of the power of sale by the executors, and that the widow took nothing, but that there was created a conditional estate dependent upon the sale if the same should ever take place. An estate upon condition depends upon the happening or not happening of some certain event whereby an estate may be either originally created, or enjoyed, or finally defeated. *Co. Litt. 201A; Bl. Com. 152; Blackwell* v. *Blackwell, 15 N. J. Law 386; Brooks* v. *Kip, 54 N. J. Eq. 462.* However, the contingency or event that was to bring this estate into being, to wit, the sale by the executors, never having occurred and being limited in extent to the life or widowhood of the widow, and she having been long since dead, of course she took no estate.

On the subject of conversion, a number of cases are cited by the complainant which are not germane. In *Huber* v. *Donoghue, 49 N. J. Eq. 125,* and *Herbert* v. *Tuthill, 1 N. J. Eq. 141,* the direction to sell was clear and unequivocal. For example, to direct that land shall be sold for the most it will bring or to the highest bidder, or as soon as conveniently may be, is very different from such a provision as is found in the will under consideration, "at any time my executors herein named have a good opportunity to do so at a fair price."

While the devise or bequest over to the defendant Martin of "all the real and personal estate and property as it is left at her death" cannot be given effect as a contingent remainder for lack of a particular estate to support it, it is good as an executory devise. *Fearne Rem. \*395.* Of course, had the widow ever come into possession of the proceeds of the sale of the property, this devise would have been defeated by reason of the unlimited power of disposal bestowed upon her. But that event never having transpired, the devise over was good, and, in consequence, at the death of the testator's widow, the defendant Martin took an indefeasible estate in fee-simple in the land sought to be partitioned.

It is also said by the complainants that the defendant Margroff, as such executor, has been guilty of a breach of trust in failing to make sale. Unfortunately, however, there is not one word in the stipulation on which this matter was tried to substantiate that contention. In fact it is said:

"The defendant executor asserts that he has never been requested to sell said lands, nor had he a good opportunity to do so at a fair price. The complainant has no knowledge as to the truth or falsity of this statement."

It is clear that the designation "the complainant" in the last sentence is a typographical error and should have been in the plural. This, reduced to its lowest terms, leaves the matter in a situation where a fraud is charged in the bill, denied by the defendant, and no proof of any kind to support the bill, not to mention overcoming the effect of the defendants' denial.

For the reasons I have given, I have concluded that the testator's widow, through whom the complainants claim title, never had title to the real estate in question or the proceeds thereof; that there is no evidence of fraud or bad faith against the defendant Margroff, and that, consequently, the bill should be dismissed. This makes it unnecessary to consider the other defenses, such as laches and exoneration that have been raised.